**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* MANFRED KNOPF,<br><br>Plaintiff,<br><br>v.<br><br>AGEVITAL PHARMACY, LLC, and JEAN M. WILSON, FNP-BC,<br><br>Defendants. | FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2) and L.R. 1.09(b)<br><br>CIVIL ACTION NO.<br>8:15-cv 2591 T36 JSS<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>**DO NOT PLACE IN PRESS BOX**<br><br>**DO NOT ENTER ON PACER** |

On behalf of the United States of America pursuant to the United States False Claims Act, 31 U.S.C. §§ 3729 *et seq.* ("FCA"), Plaintiff-Relator Manfred Knopf files this *qui tam* Complaint for treble damages and civil money penalties against defendants AgeVital Pharmacy, LLC ("AgeVital") and Jean M. Wilson, FNP-BC (collectively, "Defendants"). These claims arise from AgeVital's knowing and reckless submission of false and fraudulent claims to federal health care programs, and from Wilson knowingly and recklessly causing the submission of such claims. In support of these claims, Relator alleges as follows:

**I.     INTRODUCTION**

1.      From approximately August 2014 to January 2015, AgeVital knowingly solicited Relator to purchase expensive compounded pharmaceuticals that he neither desired nor needed, then billed Medicare for these products relying on prescriptions that Nurse Practitioner Wilson wrote notwithstanding that Wilson had never treated, or communicated in any way with, Relator.

2.   As a result of Defendants' fraudulent conduct, Medicare paid over $37,000 to AgeVital for just two medically unnecessary shipments of pharmaceuticals to Relator.

3.   On information and belief, AgeVital routinely bills Medicare, Medicaid, and other federal health care programs by preying on unsuspecting beneficiaries nationally in a similar fashion.

## II.   THE PARTIES

4.   Manfred Knopf is an individual citizen of the state of New Jersey and a Medicare beneficiary.

5.   Defendant AgeVital Pharmacy, LLC ("AgeVital") is a Florida limited liability company with its principal place of business at 16 S. Boulevard of the Presidents, Sarasota, FL 34236.

6.   Defendant Jean M. Wilson, FNP-BC ("Wilson") is a nurse practitioner with a business mailing address at 319 Stanley Avenue, Bayonne, NJ 07002, who at all relevant times has been licensed as a nurse practitioner in Maryland, New Jersey, New York, and North Carolina and has a National Provider Identifier ("NPI") number of 1740568450.

## III.   JURISDICTION AND VENUE

7.   The Court has subject matter jurisdiction over this case pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1331 and 1345.

8.   Venue is proper in this judicial district pursuant to 31 U.S.C. § 3732(a) and/or 28 U.S.C. §1391(b) because AgeVital transacts business in this District and because, on information and belief, one or more of the acts committed by AgeVital and proscribed by 31 U.S.C. § 3729 *et seq.* occurred in this District.

9. This Court has personal jurisdiction over AgeVital under 31 U.S.C. § 3732(a) because AgeVital transacts business in this district and because, on information and belief, AgeVital submitted false or fraudulent claims directly or indirectly to the federal government in this district.

10. Relator has direct and independent knowledge on which the allegations are based, is an original source of this information to the United States, and has voluntarily provided the information to the United States before filing this action based on the information.

11. This suit is not based on prior public disclosures of allegations or transactions in a criminal, civil or administrative hearing, lawsuit, investigation, audit or report, or from the news media. To the extent that there has been any public disclosure, Relator is an original source under 31 U.S.C. § 3730(e)(4)(B).

## IV. FEDERAL AND STATE-FUNDED HEALTH CARE PROGRAMS

### A. Medicare

#### 1. Statutory and regulatory background

12. Medicare is a federal health insurance system for people 65 and older and for people under 65 with certain disabilities. Medicare Part A provides hospital insurance for eligible individuals. *See* 42 U.S.C. §§1395c-1395i. Medicare Part B is a voluntary subscription program of supplementary medical insurance covering items and services other than hospitalization expenses. *See* 42 U.S.C. § 1395k(a)(2)(B). The Medicare Prescription Drug, Improvement and Modernization Act of 2003 established a voluntary prescription drug

benefit under a new Medicare Part D. All persons enrolled in Medicare Part A and/or Medicare Part B are eligible to enroll in a prescription drug plan under Part D.

13. Generally, Medicare Parts B and D cover prescription drugs, including compounded drugs. United States Department of Health and Human Services ("HHS") Office of Inspector General ("OIG"), "Compounded Drugs Under Medicare Part B: Payment and Oversight," p. 2, *available at* http://oig.hhs.gov/oei/reports/oei-03-13-00270.pdf (last accessed Sept. 10, 2015) (hereinafter "HHS OIG Compounded Drugs Report"); *id.* at 3-4.

### 2. Statutes and regulations prohibiting fraudulent conduct

14. Medicare does not pay for any and all services furnished to Medicare beneficiaries but only those services that are "reasonable and necessary for the diagnosis or treatment of illness or injury." 42 U.S.C. § 1395y(a)(1)(A). Medicare requires that Part D plan providers not participate in "false, fraudulent, or abusive activities affecting the Medicare, Medicaid, or other State or Federal health care programs, including submission of false or fraudulent data." 42 C.F.R. § 423.509(a)(4).

### B. Medicaid

15. Medicaid is a federal health insurance system that is administered by the states and is available to low-income individuals and families who meet eligibility requirements determined by federal and state law. Medicaid pays for items and services, including prescription drugs, pursuant to plans developed by the states and approved by HHS through the Centers for Medicare & Medicaid Services. 42 U.S.C. §§ 1396a(a)-(b). States pay health care providers, including pharmacies, according to established rates, and the federal

government then pays a statutorily established share of "the total amount expended ... as medical assistance under the State plan." *See* 42 U.S.C. §§ 1396b(a)(1).

### C. Other Federal Health Care Programs

16. The federal government administers other health care programs including, but not limited to, TRICARE, CHAMPVA, and the Federal Employee Health Benefit Program. TRICARE, administered by the United States Department of Defense, is a health care program for individuals and dependents affiliated with the armed forces. CHAMPVA, administered by the United States Department of Veterans Affairs, is a health care program for the families of veterans with 100 percent service-connected disability. The Federal Employee Health Benefit Program, administered by the United States Office of Personnel Management, provides health insurance for federal employees, retirees, and survivors.

## V. THE UNITED STATES FALSE CLAIMS ACT

17. The United States False Claims Act prohibits, *inter alia*, the following:

knowingly presenting (or causing to be presented) to the federal government a false or fraudulent claim for payment or approval;

knowingly making or using (or causing to be made or used) a false record or statement material to a false or fraudulent claim;

conspiring to commit a violation of the False Claims Act; and

knowingly concealing or knowingly and improperly avoiding or decreasing an obligation to pay or transmit money to the Government.

31 U.S.C. §§ 3729(a)(1)(A),(B),(C) and (G).

## VI. DEFENDANTS' ACTIONABLE CONDUCT

18. Defendants have engaged in fraudulent conduct in violation of the laws and regulations stated above, resulting in substantial actual loss to the United States.

### A.     Brief Overview of Compounded Drugs

19.     Pharmacy compounding is a practice whereby pharmacists combine, mix, or alter ingredients to create a customized medication for an individual patient pursuant to a licensed practitioner's prescription.  HHS OIG Compounded Drugs Report at 1. Compounding does not generally include mixing or reconstituting commercial products in accordance with the manufacturer's instructions or the product's approved labeling. *Id.*

20.     Providers prescribe compounded drugs for various reasons, including:

- a noncompounded version of the medicine is discontinued or generally unavailable;

- the patient is allergic to certain dyes or preservatives in the noncompounded version;

- the patient has unique needs and requires tailored dosage strength (*e.g.*, an infant); or

- the pharmacist can combine several medications to increase compliance in taking the medications.

*Id.*

### B.     Defendants Acquire Relator's Insurance Information and Fraudulently Bill Medicare

#### 1.     Summary of Relator's Relevant Medical History

21.     In mid-2014, Relator slipped and suffered an injury that caused pain in his neck, left arm, and left shoulder.

22.     Between July 17, 2014 and December 29, 2014, Relator sought and received treatment from several providers for his injuries.

23.     As detailed below, Relator has never requested nor used any drugs or services provided by AgeVital.

6

24.  As detailed below, Relator has never consulted with nor been treated by, or had any communication whatsoever with, Nurse Practitioner Wilson.

### 2. Unsolicited phone calls from AgeVital starting in August 2014

25.  Between August and December 2014, Relator received approximately three or four phone calls from different individuals who identified themselves as calling on behalf of AgeVital. The callers stated that they were aware of Relator's injuries and pain and wanted to help him.

26.  Over the course of these conversations, the callers asked for Relator's insurance information and date of birth, and Relator complied.

### 3. Unsolicited Packages from AgeVital

27.  On December 5, 2014, Relator signed for a Federal Express package from AgeVital containing two containers of "Scar Be GONE Cream (FS-P)" ("Scar Be Gone") and two containers of "GFLA (FS-P)" ("GFLA").

28.  Both Scar Be Gone and GFLA are compounded pharmaceuticals.

29.  Relator did not know what the December 5, 2014 package contained when he signed for it, and he has never used any of the products.

30.  The prescriber listed on the containers delivered to Relator on December 5, 2014 is "Dr. Jean Wilson." Relator has never heard of this person or been treated by a health care provider with this name, and the name "Jean Wilson" does not appear in Relator's medical records between June and December 2014.

31.  Using the NPI number listed in Relator's prescription claim records, Relator's counsel has identified "Dr. Jean Wilson" as defendant Nurse Practitioner Wilson.

32. On December 20, 2014, Relator signed for another Federal Express package from AgeVital. Relator did not open this package; he retained it unopened until he provided it to the undersigned counsel, who then opened it with his authorization.

33. The December 20, 2014 package contains two more containers of Scar Be Gone and GFLA with the prescriber again identified as "Dr. Jean Wilson."

34. Using the NPI numbers listed in Relator's prescription claim records, Relator's counsel has also confirmed that defendant Nurse Practitioner Wilson also prescribed the compounded pharmaceuticals delivered on December 20, 2014 to Relator.

35. In late January 2015, Relator received a third Federal Express package from AgeVital that he refused to accept. Shortly after refusing the package, Relator received a call from a woman on behalf of AgeVital asking why he had refused delivery. Relator responded that he had not been prescribed these medications and he did not want them.

36. AgeVital did not send Relator any additional medications thereafter, but it did not reverse the charges or reimburse Medicare for the first two shipments even though Relator had advised the caller that he did not need or want the products.

C. **Defendants' False Claims and the Government's Damages**

37. Relator maintains a Medicare prescription drug plan through Express Scripts.

38. Relator's Express Scripts Prescription Claim Records show that Wilson prescribed Scar Be Gone and GFLA for Relator, and that AgeVital billed Express Scripts for Wilson's prescriptions between November 6, 2014 and January 29, 2015.

39. At all relevant times, Defendants knowingly and willfully billed Medicare, and failed to reimburse Medicare, for compounded, prescription drugs that were neither reasonable nor necessary for the diagnosis or treatment of illness or injury.

40. At all relevant times, Defendants knowingly concealed and continue to conceal their obligation to pay or transmit money to the United States.

41. As a result of Defendants' fraudulent conduct pertaining to Relator, Medicare paid AgeVital approximately $37,377.85 for the medically unnecessary compounded pharmaceuticals delivered to Relator and the corresponding claims that AgeVital submitted between November 6, 2014 and January 29, 2015.

42. On information and belief, AgeVital has billed Medicare, Medicaid, and other federal health care plan beneficiaries other than Relator, and on information and belief, Defendants have committed this fraud in every state in which AgeVital conducts business. The above billing therefore potentially represents only a small fraction of false claims paid by federal health care programs as a result of Defendants' wrongful conduct. Moreover, Wilson caused the submission of these false claims and potentially others, by writing fraudulent and medically unnecessary prescriptions.

43. The United States, through its carriers and intermediaries, has made payments to Defendants and has been damaged in an amount to be determined. The United States is entitled to treble its actual damages and to civil penalties in the amount of $5,500 to $11,000 for each of the false claims submitted.[1]

---

[1] Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, as amended by the Debt Collection Improvement Act of 1996, 28 U.S.C. § 2461 (notes) and 64 Fed. Reg. 47099, 47103

## COUNT I
### (VIOLATION OF THE UNITED STATES FALSE CLAIMS ACT – 31 U.S.C. § 3729(a)(1)(A))

44.     Relator incorporates by reference and re-alleges all paragraphs of this Complaint set forth above as if fully set forth herein.

45.     Defendants knowingly presented, or caused to be presented, and continue to present or cause to be presented, false and fraudulent claims for payment or approval to the United States – *i.e.*, the foregoing false and fraudulent claims for payments from the government health programs described above – in violation of 31 U.S.C. § 3729(a)(1)(A).

46.     Said false and fraudulent claims were presented with Defendants' actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

47.     The United States relied on these false and fraudulent claims, was ignorant of the truth regarding these claims, and would not have paid Defendants for these false and fraudulent claims had it known the falsity of said claims by Defendants.

48.     As a direct and proximate result of the false and fraudulent claims made by Defendants, the United States has suffered damages and therefore is entitled to recovery as provided by the False Claims Act in an amount to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each such violation of the False Claims Act.

---

(1999), the FCA civil penalties are $5,500 to $11,000 for violations, such as those alleged here, occurring on or after September 29, 1999.

## COUNT II
## (VIOLATION OF THE UNITED STATES FALSE CLAIMS ACT – 31 U.S.C. § 3729(a)(1)(B))

49. Relator incorporates by reference and re-alleges all paragraphs of this Complaint set forth above as if fully set forth herein.

50. Defendants knowingly made, used or caused to be made or used, and continue to make, use and cause to be made or used, false records or false statements material to the foregoing false or fraudulent claims to get these false or fraudulent claims paid and approved by the United States, in violation of 31 U.S.C. § 3729(a)(1)(B).

51. Defendants' knowingly false records or false statements were material, and upon information and belief continue to be material, to the false and fraudulent claims for payments they made and continue to make to the United States.

52. Defendants' materially false records or false statements are set forth above and include, but are not limited to false electronic claims submitted to the government health programs described above and supporting materials, and false certifications of the truthfulness and accuracy of claims submitted, to get false or fraudulent claims paid or approved by the United States.

53. These said false records or false statements were made, used or caused to be made or used, and continue to be made, used and caused to be made and used, with Defendants' actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

54. As a direct and proximate result of these materially false records or false statements, and the related false or fraudulent claims made by Defendants, the United States

11

has suffered damages and therefore is entitled to recovery as provided by the False Claims Act in an amount to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each such violation of the False Claims Act.

## COUNT III
## (VIOLATION OF THE UNITED STATES FALSE CLAIMS ACT – 31 U.S.C. § 3729(a)(1)(C))

55. Relator incorporates by reference and re-alleges all paragraphs of this Complaint set forth above as if fully set forth herein.

56. Upon information and belief, Defendants conspired, and continue to conspire, to commit a violation of 31 U.S.C. § 3729(a)(1)(A),(B), and (G), in violation of 31 U.S.C. § 3729(a)(1)(C).

57. As a direct and proximate result of the above conduct by Defendants, the United States has suffered damages and therefore is entitled to recovery as provided by the False Claims Act of an amount to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each violation of the False Claims Act.

## COUNT IV
## (VIOLATION OF THE UNITED STATES FALSE CLAIMS ACT – 31 U.S.C. § 3729(a)(1)(G))

58. Relator incorporates by reference and re-alleges all paragraphs of this Complaint set forth above as if fully set forth herein.

59. Upon information and belief, Defendants knowingly made, used or caused to be made or used, and continue to knowingly make, use or cause to be made or used, false records or false statements, material to an obligation to pay or transmit money or property to the United States Government, or knowingly concealed and continue to conceal an obligation

to pay or transmit money or property to the United States Government, or knowingly and improperly avoided or decreased, and continue to knowingly and improperly avoid and decrease, an obligation to pay or transmit money or property to the United States Government, in violation of 31 U.S.C. § 3729(a)(1)(G).

60. As a direct and proximate result of the above conduct by Defendants, the United States has suffered damages and therefore is entitled to recovery as provided by the False Claims Act of an amount to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each violation of the False Claims Act.

### CLAIM FOR RELIEF

WHEREFORE, Relator requests that judgment be entered against defendants AgeVital Pharmacy, LLC and Jean M. Wilson, FNP-BC for treble the amount of the United States' damages to be determined at trial, and all allowable civil penalties, attorney's fees, interest and costs under the False Claims Act, and for all other and further relief as the Court may deem just and equitable.

### DEMAND FOR JURY TRIAL

Relator demands a jury trial in this case.

Dated this ___ day of November, 2015

Respectfully submitted,

JAMES HOYER, P.A.

BY: _____
SEAN P. KEEFE
FL Bar No. 413828
skeefe@jameshoyer.com

ELAINE STROMGREN
FBN: 417610
estromgren@jameshoyer.com
4830 West Kennedy Boulevard, Suite 550
Tampa, Florida 33609
Phone: (813) 397-2300
Fax: (813) 397-2310
Attorneys for Plaintiff-Relator

KLINE & SPECTER, P.C.
BY: DAVID J. CAPUTO
David.Caputo@klinespecter.com
DAVID C. WILLIAMS
David.Williams@klinespecter.com
1525 Locust Street, Nineteenth Floor
Philadelphia, Pennsylvania 19102
Phone: (215) 772-1000
Fax: 215-735-5827
Attorneys for Plaintiff-Relator
*(subject to pro hac vice admission)*

CQH FIRM
BY: CLAUDINE Q. HOMOLASH
Claudine@cqhfirm.com
220 Locust Street, #26H
Philadelphia, Pennsylvania 19106
(215) 496-1012
Attorney for the Plaintiff-Relator
*(subject to pro hac vice admission)*